## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

BRUCE C. MCNEIL
45 Goodyear Avenue
Buffalo, New York 14212

       Plaintiff,

v.

THE CITY OF BUFFALO
c/o Corporation Counsel
65 Niagara Street, 1100 City Hall
Buffalo, New York  14202

BYRON LOCKWOOD, individually and in
his capacity as Police Commissioner of the
Buffalo Police Department,
16 Treehaven Road
Buffalo, New York 14215

JOHN DAVIDSON, individually and in his
capacity as a Buffalo Police Officer,
15 Susan Lane
Buffalo, New York 14220

PATRICK GARRY, individually and in his
capacity as a Buffalo Police Officer,
137 Lockwood Avenue
Buffalo, New York 14220

ANTHONY BURVID, individually and in his
capacity as a Buffalo Police Officer,
45 Britt Avenue
Buffalo, New York 14220

JENNY VELEZ, individually and in her
capacity as a Buffalo Police Officer,
510 South Ogden Street
Buffalo, New York  14206

ANTHONY MCHUGH, individually and in
his capacity as a Buffalo Police Officer,
41 Werkley Road
Tonawanda, New York 14150

**VERIFIED COMPLAINT
AND JURY DEMAND**

Civil Action No. _20-cv-998_

PATRICK BOICE, individually and in his
capacity as a Buffalo Police Officer,
960 Knabb Road
Elma, New York 14059

MATTHEW VAUGHN, individually and in
his capacity as a Buffalo Police Officer,
325 Cumberland Avenue,
Buffalo, New York 14220

    Defendants.

Plaintiff, Bruce C. McNeil ("Plaintiff" or "Mr. McNeil") by his attorneys, Rupp

Baase Pfalzgraf Cunningham LLC, as and for his verified complaint against Defendants, the City

of Buffalo, Bryon Lockwood, John Davidson, Patrick Garry, Anthony Burvid, Jenny Velez,

Anthony McHugh, Patrick Boice, and Matthew Vaughn (hereinafter, collectively referred to as

"Defendants") alleges as follows:


## PRELIMINARY STATEMENT

   1.  Plaintiff brings this action for compensatory damages, punitive damages,

other damages this Court deems just and proper, and attorneys' fees pursuant to 42 U.S.C.

§§ 1983, 1985, 1986, and 1988 for violations of his Constitutionally-protected civil rights.  The

Constitutionally-protected civil rights violated by Defendants include Plaintiff's rights to due

process, security in his person, right against false imprisonment, right to exemption from

arbitrary arrest, right to liberty, right to travel and movement, and right against malicious

prosecution.  Mr. McNeil's aforementioned rights are secured by the above-referenced statutes,

the Constitution of the United States, and the common law and the Constitution of the State of

New York.

## JURISDICTION

2.     This action is brought under 42 U.S.C. §§ 1983, 1985, 1986, and 1988,

and under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

3.     This Court has subject matter jurisdiction over all claims pursuant to

28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. § 1983.

4.     Plaintiff further invokes this Court's pendent jurisdiction, pursuant to

28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related

to claims in this action within the original jurisdiction of this Court that they form part of the

same case or controversy.

## VENUE

5.     Pursuant to 28 U.S.C. §1391(b), venue is proper in the Western District of

New York because the events forming the basis of Plaintiff's verified complaint occurred in this

District.

## PARTIES

6.     At all times hereinafter mentioned, Mr. McNeil was and is a citizen of the

State of New York, County of Erie, residing at 45 Goodyear Avenue Buffalo, New York 14212.

7.     Defendant, the City of Buffalo, was and is a municipal corporation duly

organized and existing under the laws of the State of New York and has a business address at

City Hall, 65 Niagara Square, Buffalo, New York 14202.

8.     Defendant, the City of Buffalo, through its Common Council,

City Counsel and their officers, agents, servants, employees, and/or their specialized units,

promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the

conduct and actions of police officers employed by the City of Buffalo, including Defendants

Davidson, Garry, Burvid, Vaughn, Velez, Boice, and McHugh.

     9.     Defendant, Byron Lockwood, was and is a resident of the County of Erie and State of New York, and is the current Police Commissioner of the Buffalo Police Department. Defendant Lockwood is employed by the City of Buffalo, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as the Police Commissioner of the City of Buffalo.

     10.    As the Police Commissioner for the City of Buffalo, Defendant Lockwood was responsible for the hiring, training, supervision, discipline, and conduct of the Defendant officers, and is further responsible for setting, reviewing, and/or enforcing the policies and regulations of the Buffalo Police Department. Defendant Lockwood also is responsible for ensuring that the City of Buffalo Police Officers obey the laws of the State of New York and the United States of America.

     11.    Upon information and belief, at all relevant times, Defendant Lockwood was a policymaker for the Buffalo Police Department in all matters that are alleged herein, and Defendant Lockwood participated in the promulgation of policies and/or customs for the Buffalo Police Department by Defendant the City of Buffalo. Defendant Lockwood directly was responsible for policy and custom implementation (in whole or in part) at the City of Buffalo Police Department. In addition, Defendant Lockwood is being sued in his individual capacity for damages caused by his actions and/or conduct.

     12.    Defendant, John Davidson, was and is a resident of the County of Erie, and State of New York. He was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit. In addition,

4

Defendant Davidson is being sued in his individual capacity for damages caused by his actions and/or conduct.

13.     Defendant, Patrick Garry, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Garry was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Garry is being sued in his individual capacity for damages caused by his actions and/or conduct.

14.     Defendant, Anthony Burvid, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Burvid was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Burvid is being sued in his individual capacity for damages caused by his actions and/or conduct.

15.     Defendant, Matthew Vaughn, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Vaughn was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Vaughn is being sued in his individual capacity for damages caused by his actions and/or conduct.

16.     Defendant, Jenny Velez, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Velez was acting within the scope of her employment and

official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Velez is being sued in her individual capacity for damages caused by her actions and/or conduct.

17.    Defendant, Patrick Boice, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Boice was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Boice is being sued in his individual capacity for damages caused by his actions and/or conduct.

18.    Defendant, Anthony McHugh, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant McHugh was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant McHugh is being sued in his individual capacity for damages caused by his actions and/or conduct.

19.    At all relevant times, Defendants, either personally or through their employees, were acting under the color of law and/or in compliance with the official rules, regulations, laws, statutes, policies, customs, ordinances, usages and/or practices of the City of Buffalo.  Defendants' actions and conduct show that they did not, nor could they, reasonably rely upon any existing law.

## FACTUAL BACKGROUND

20.     Memorial Day of 2019 (May 27, 2019), Plaintiff Bruce C. McNeil woke up early and left his home around 5 a.m. to pick up a newspaper and get a coffee.

21.     On his way home, Mr. McNeil was pulled over while driving his gray 2007 Toyota Sequoia (License Plate No. JDH1179) down Broadway Street.

22.     Although Mr. McNeil was driving down Broadway when the Officers first pursued Mr. McNeil's vehicle, he was not pulled over until he turned onto Stanton Street.

23.     Mr. McNeil was pulled over by City of Buffalo police officers John M. Davidson and Patrick Garry.

24.     According to the complaint summary report produced and maintained by the City of Buffalo, Mr. McNeil was pulled over at approximately 5:37 a.m.

25.     According to the complaint summary report produced and maintained by the City of Buffalo, it states that Mr. McNeil was pulled over by Officers Davidson and Garry at the intersection of Monroe Street and Broadway Street.

26.     Officers Davidson and Garry approached Mr. McNeil's vehicle and asked for his license and registration.

27.     Mr. McNeil asked Officers Davidson and Garry why they pulled him over.

28.     Officers Davidson and Garry would not tell Mr. McNeil why they pulled him over.

29.     Not wanting to cause a disturbance, Mr. McNeil gave his driver's license to Officers Davidson and Garry.

30.     Officers Davidson and Garry took Mr. McNeil's driver's license back to their vehicle and, upon information and belief, reported the information on Mr. McNeil's driver's license to Erie County Dispatch.

31.     After reporting said information to Erie County Dispatch, Officers Davidson and Garry returned to Mr. McNeil's vehicle.

32.     Officers Davidson and Garry then told Mr. McNeil that there was a problem and that he needed to step out of the vehicle.

33.     Officers Davidson and Garry were simultaneously opening Mr. McNeil's driver's side door as they were telling Mr. McNeil that there was a problem.

34.     Mr. McNeil asked what the problem was, but Officers Davidson and Garry stated that they "just needed to check" Mr. McNeil.

35.     Officers Davidson and Garry picked Mr. McNeil up out of the car and applied handcuffs to Mr. McNeil's wrists.

36.     Officers Davidson and Garry then searched Mr. McNeil's person.

37.     After searching Mr. McNeil's person, Officers Davidson and Garry placed Mr. McNeil into the back of their patrol car.

38.     Without reading Mr. McNeil his Miranda Rights, Officers Davidson and Garry then asked Mr. McNeil if he had anything in his car.

39.     Mr. McNeil truthfully answered that if he had anything in the car, it would be ashes of marijuana in the ashtray of the vehicle.

40.     Mr. McNeil asked Officers Davidson and Garry if he was being arrested.

41.     Officers Davidson and Garry told Mr. McNeil that he was being detained.

42. Officers Davidson and Garry left Mr. McNeil in the back of their patrol vehicle and started to walk towards Mr. McNeil's vehicle.

43. Officers Davison and Garry searched Mr. McNeil's vehicle.

44. After searching Mr. McNeil's vehicle, Officers Davidson and Garry returned to their patrol vehicle and told Mr. McNeil that they did not find any contraband in the vehicle.

45. Officers Davidson and Garry removed the handcuffs from Mr. McNeil and told him that he was free to leave.

46. At no time did Officers Davidson and Garry tell Mr. McNeil why he had been pulled over.

47. When Mr. McNeil returned to his vehicle, he found that Officers Davidson and Garry had caused damage to his vehicle during their search.

48. For example, Mr. McNeil noticed that the hood on his vehicle started to bounce up and down while he was driving.

49. Mr. McNeil's hood did not have this problem before Officers Davidson and Garry ransacked his car during their pretextual stop and subsequent search of Mr. McNeil's vehicle.

50. Mr. McNeil was understandably upset, and so he called 911 to report and make a complaint against Officers Davidson and Garry.

51. The individual who responded to Mr. McNeil's 911 call told Mr. McNeil that what happened to him was not right, and that he should go to the C-District Precinct headquarters to make his complaint against Officers Davidson and Garry.

52.     Mr. McNeil went to the C-District Precinct headquarters to make his complaint against Officers Davidson and Garry.

53.     Mr. McNeil arrived at the C-District Precinct headquarters at approximately 5:50 a.m.

54.     Mr. McNeil started to explain to the officers present at the front desk of the C-District Precinct headquarters about the pretextual stop by Officers Davidson and Garry and the subsequent search and damage caused to his vehicle by said search.

55.     The Lieutenant heard Mr. McNeil's complaint and told Mr. McNeil to leave and not return to make a complaint against Officers Davidson and Garry.

56.     The Lieutenant told Mr. McNeil that he would go to jail if he again tried to make a complaint.

57.     Mr. McNeil asked the Lieutenant what he would go to jail for.

58.     The Lieutenant told Mr. McNeil that he would go to jail for the marijuana in his car.

59.     Mr. McNeil told the Lieutenant that there was no marijuana in his car.

60.     Upon information and belief, the Lieutenant was Lt. Patrick Boice who told Mr. McNeil to leave and not return to the C-District Precinct headquarters.

61.     Mr. McNeil then went to his Uncle's house and told his family members about the pretextual stop and subsequent search by Officers Davidson and Garry, as well as his thwarted efforts to make a complaint against these Officers.

62.     Mr. McNeil's family members were understandably upset over the way that Mr. McNeil was mistreated by these City of Buffalo police officers.

63.     Mr. McNeil's mother told him that she wanted to go to the C-District Precinct headquarters to make a complaint against the City of Buffalo officers.

64.     Mr. McNeil and his mother returned to the C-District Precinct headquarters at approximately 6:10 a.m.

65.     Mr. McNeil and his mother told the officers at the front desk of the C-District Precinct headquarters that they were there to make a complaint.

66.     This time, there was a female lieutenant at the front desk.

67.     Upon information and belief, the female lieutenant was Lt. Jenny Velez.

68.     Defendant Velez told Mr. McNeil that the previous lieutenant, who, upon information and belief, was Lt. Patrick Boice, told Mr. McNeil that he would be arrested if he returned to the C-District Precinct headquarters to make a complaint.

69.     Mr. McNeil asked Defendant Velez why they would arrest him.

70.     Defendant Velez told Mr. McNeil that he would be arrested for the marijuana in his car.

71.     Mr. McNeil's mother told Defendant Velez "m'am, there is no marijuana in the car."

72.     At least five officers were in a room behind the front desk and, upon information and belief, they could hear the conversation between Defendant Velez, Mr. McNeil, and Mr. McNeil's mother.

73.     Upon information and belief, the five officers in said room were Lt. Anthony McHugh, Officer Anthony Burvid, Officer Matthew Vaughn, Officer John Davidson, and Officer Patrick Garry.

74. While listening to Mr. McNeil's complaint, the five officers in the back room then conspired to allege that Officers Davidson and Garry found crack cocaine in the back of their patrol car, and further conspired to allege that the crack cocaine belonged to Mr. McNeil.

75. Officer Davidson emerged from the back room and told Defendant Velez that they found crack cocaine in the back of their patrol vehicle.

76. Defendant Velez then told Mr. McNeil that he was being charged with crack cocaine, and that "the charges are already downtown."

77. Confused, Mr. McNeil asked Defendant Velez for the basis of her charge.

78. Defendant Velez then told Mr. McNeil that he left crack cocaine in the back of Officers Davidson and Garry's patrol vehicle.

79. Mr. McNeil protested the allegation, and Defendant Velez told Mr. McNeil "it's too late, you should have left."

80. Officers Anthony Burvid and Matthew Vaughn then emerged from the back room and arrested Mr. McNeil in front of his mother and other C-District officers.

81. Mr. McNeil was humiliated, confused, and angry.

82. Mr. McNeil was then transported by the Officers Davidson and Garry to the Erie County Holding Center.

83. When they arrived, Officers Davidson and Garry presented the Holding Center Lieutenant the paperwork associated with Mr. McNeil's false arrest.

84. The Lieutenant told the Defendant officers that they "need to work on their story."

85. Mr. McNeil was then booked and placed into a cell at the Holding Center.

86.     One of the Holding Center employees told Mr. McNeil that the charges against him were ridiculous and that he wanted to help get Mr. McNeil to his arraignment so that he could enjoy his Memorial Day.

87.     Upon information and belief, arraignments on Memorial Day of 2019 ended at noon.

88.     Accordingly, if Mr. McNeil did not get to his arraignment by noon, he would have to spend the night at the Holding Center.

89.     Luckily, Mr. McNeil was able to get through the arraignment process and he was released on his own recognizance.

90.      To add insult to injury, the Defendant officers publicized the details leading up to the false arrest of Mr. McNeil.

91.     The Buffalo News then published an embarrassing story titled "Man leaves crack cocaine in worst place possible: the backseat of a police car."[1]

92.     The story used the Plaintiff's full name, Bruce C. McNeil, and included his address as well.

93.     Mr. McNeil's father and son have the same name as him, Bruce C. McNeil.

94.     Plaintiff received calls from his son's teachers asking for more details about the arrest believing that it was his son who was arrested.

95.     Mr. McNeil's father received numerous calls about the false arrest.

96.     Mr. McNeil himself received numerous calls regarding the false arrest.

---

[1] https://buffalonews.com/2019/05/28/man-leaves-crack-cocaine-in-worst-place-possible-the-backseat-of-a-police-car/.

13

97.     A simple Google search of Bruce C. McNeil reveals as the first result the Buffalo News story based upon the Defendants' false arrest of Mr. McNeil.

98.     After the Buffalo News story was published on May 28, 2019, Mr. McNeil had trouble receiving public assistance until he was acquitted of all charges associated with his false arrest in December of 2019.

99.     The Erie County prosecutor told Mr. McNeil that he would put the case in front of a Grand Jury.

100.    However upon information and belief, the prosecutor spoke to the Defendant officers and then realized that the criminal charges were false.

101.    For instance, the paperwork associated with Mr. McNeil's false arrest does not even state where in the backseat of their patrol vehicle Officers Davidson and Garry found the crack cocaine.

102.    The prosecutor then met with Mr. McNeil and told him that the Defendant officers were willing to testify and that he should take a plea deal.

103.    Mr. McNeil and his attorney told the prosecutor that they would not accept a plea deal, and that they wanted to go to trial.

104.    The first day of trial for Mr. McNeil's false arrest was in October of 2019.

105.    Once the judge knew that Mr. McNeil was charged with possession of crack cocaine after he went to the C-District Precinct headquarters twice to make a complaint against Officers Davidson and Garry, the judge told the prosecutor that it was unlikely he would convict Mr. McNeil.

106.    Upon information and belief, at this point, the Erie County District Attorney's Office also knew that the charges brought by Officers Davidson and Garry were false,

14

and that the Defendants planted the crack cocaine evidence to charge Mr. McNeil with crime that he did not commit in retaliation for the complaints Mr. McNeil attempted to lodge against Officers Davidson and Garry.

107.     The second day of trial was in December of 2019.

108.     The prosecutor, an attorney with the Erie County District Attorney's Office, called Lt. Velez to the stand as a witness to support the charges brought by the People of the State of New York; however, the prosecutor did not call Officers Davidson and Garry to the stand to testify.

109.     Upon information and belief, the prosecutor knew that by not calling Officers Davidson and Garry to the stand, the People would be unable to sustain their burden beyond a reasonable doubt; however, neither the Defendants nor the Erie County District Attorney's Office dropped the charges against Mr. McNeil as they were ethically obligated to do when they knew they could not sustain their burden of proof to convict Mr. McNeil.

110.     At no point during the trial did the prosecutor call Officers Davidson or Garry to the stand.

111.     At the conclusion of trial, Mr. McNeil was acquitted of all charges associated with his false arrest for allegedly possessing crack cocaine.

112.     Sometime after Mr. McNeil's false arrest, he submitted a complaint to the City of Buffalo's Internal Affairs regarding his false arrest on Memorial Day of 2019.

113.     To date, no disciplinary action has been taken by the City of Buffalo against any of the Defendant officers associated with Mr. McNeil's false arrest on Memorial Day of 2019.

114.    On or around April 4, 2020, Mr. McNeil was sitting in his vehicle at 88 Fougeron Street, Buffalo, New York 14211 when Officer Garry responded to a call.

115.    Officer Garry was responding to a domestic dispute call that had nothing to do with Mr. McNeil.

116.    Officer Garry called out to Mr. McNeil, who was sitting in his car at the time, "hey Bruce."

117.    Mr. McNeil responded that he is not on good terms with Officer Garry, and that there is no reason for Officer Garry to call out his name.

118.    Officer Garry then advised Mr. McNeil that he and Mr. McNeil needed to "get along" because he, Officer Garry, is "not going anywhere."

119.    Mr. McNeil received no tickets, citations, or violations regarding this unprovoked and unnecessary interaction with Officer Garry.

120.    A few days later, on April 6, 2020, Mr. McNeil was pulled over again by Officer Garry.

121.    Officer Garry glanced over and saw Mr. McNeil while both individuals were driving in opposite directions down Broadway Street.

122.    Officer Garry then drove over the median and started to follow Mr. McNeil.

123.    Officer Garry turned on the lights and sirens for his patrol vehicle and pulled over Mr. McNeil's vehicle.

124.    Mr. McNeil told his passenger to record the traffic stop on his cell phone.

125.    Mr. McNeil also pulled over at the Mandella gas station on Broadway and Jefferson to make sure there was footage capturing the traffic stop by Officer Garry.

126.    Again, Mr. McNeil asked Officer Garry why he pulled him over and Officer Garry did not tell him why.

127.    Officer Garry then told Mr. McNeil "I heard you didn't accept the plea deal."

128.    Upon information and belief, Officer Garry was referring to his false arrest of Mr. McNeil on Memorial Day of 2019.

129.    Officer Garry again ordered Mr. McNeil and his passenger to exit the vehicle.

130.    Officer Garry searched Mr. McNeil's person and then placed handcuffs on his wrists.

131.    Officer Garry then walked Mr. McNeil to the backseat of his patrol vehicle.

132.    Mr. McNeil told Officer Garry that he would not get into the back of his police vehicle because of the previous false arrest.

133.    Officer Garry then looked in the back of his police vehicle, and told Mr. McNeil that he did not see any drugs in the back of his patrol vehicle "this time."

134.    Mr. McNeil then agreed to go into the back of the police vehicle.

135.    Officer Garry searched Mr. McNeil's vehicle without Mr. McNeil's permission and without probable cause.

136.    Officer Garry did not find any contraband in Mr. McNeil's vehicle.

137.    Officer Garry took the handcuffs off of Mr. McNeil's wrists.

138.    Mr. McNeil received no tickets, citations, or violations regarding this unprovoked and unnecessary traffic stop by Officer Garry.

139.    Mr. McNeil then filed another complaint against Officer Garry for this unnecessary traffic stop.

140.    To date, Officer Garry still has not been disciplined for either traffic stop.

141.    The conduct of Defendant Officer Garry in detaining Plaintiff and searching his vehicle was totally without probable cause, and was done maliciously, falsely, and in bad faith.

142.    Mr. McNeil now lives in constant fear of Officer Garry and other City of Buffalo police officers and the possibility that they could again illegally and falsely pull him over and charge him with a crime that he did not commit causing severe and permanent injury to himself and his family.

143.    This fear has caused Mr. McNeil severe emotional and psychological distress.

144.    As a direct and proximate result of Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights, and therefore, Plaintiff has incurred and continues to incur attorneys' fees, expert fees, and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### False Arrest under 42 U.S.C. § 1983
### Against all Defendants

145.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 139 of this verified complaint as if fully set forth herein.

146.     Defendants are liable pursuant to 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Mr. McNeil in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

147.     Defendants were acting under the color of law when Mr. McNeil was arrested.

148.     Defendants did not have probable cause to charge that Mr. McNeil violated Section 220.06(5) of the New York State Penal Law.

149.     Defendants deprived Mr. McNeil of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

150.     Defendants confined Mr. McNeil when they handcuffed him and told him he was going to jail on May 27, 2019.

151.     Defendants continuously confined Mr. McNeil until he was released from the Erie County Holding Center on May 27, 2019.

152.     The confinement by the Defendants was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

153.     As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

154.     The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### False Imprisonment under 42 U.S.C. § 1983
### <u>Against All Defendants</u>

155.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 149 of this verified complaint as if fully set forth herein.

156.    Defendants are liable pursuant to 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Mr. McNeil in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

157.    Defendants were acting under the color of law when Mr. McNeil was arrested.

158.    Defendants did not have probable cause to charge that Mr. McNeil violated Section 220.06(5) of the New York State Penal Law.

159.    Defendants deprived Mr. McNeil of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

160.    Defendants confined Mr. McNeil when they handcuffed him and told him he was going to jail on May 27, 2019.

161.    Defendants continuously confined Mr. McNeil until he was released from the Erie County Holding Center on May 27, 2019.

162.    Mr. McNeil was aware of the confinement by Defendants and repeatedly advised the officers that he did not consent to the confinement.

163.    The confinement by the Defendants was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

164.    As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

165.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Malicious Prosecution under 42 U.S.C. § 1983**
**Against All Defendants**

166.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 160 of this verified complaint as if fully set forth herein.

167.    Defendants unreasonably seized and unlawfully arrested Mr. McNeil in violation of the Fourth and Fourteenth Amendment of the United States Constitution.

168.    Upon information and belief, Defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Mr. McNeil for Section 220.06(5) of the New York State Penal Law, acted intentionally, and with malice, to cause Mr. McNeil to be arrested, charged and prosecuted for those charges, thereby violating Mr. McNeil's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

169.    The prosecution of the charge levied by the Defendants against Mr. McNeil on May 27, 2019 were terminated in Mr. McNeil's favor.

170.    But for Defendants' unlawful and malicious conduct, Mr. McNeil would not have been arrested and prosecuted.

171.    Upon information and belief, Defendants' actions and conduct were malicious and deprived Mr. McNeil of his liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that his or her actions were lawful.

172.    As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

173.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### FOURTH CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Unreasonable Search and Seizure under 42 U.S.C. § 1983**
**Against Defendants Garry and Davidson**

174.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 168 of this verified complaint as if fully set forth herein.

175.    At all relevant times, Mr. McNeil enjoyed and possessed a right under the Fourth and Fourteenth Amendment of the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in his person, vehicle, personal effects, and property.

176.    As described above, on May 27, 2019, Defendants Garry and Davidson unlawfully and unreasonably entered and searched Mr. McNeil and his vehicle and property,

22

without lawful authority in the form of probable cause or a validly issued judicial search warrant naming Mr. McNeil or the vehicle.

177.    Defendants Garry and Davidson, unreasonably and without probable cause or reasonable suspicion to believe that Mr. McNeil committed a violation of the laws of New York State, pulled over Mr. McNeil's vehicle and searched his vehicle and property, and destroyed and seized items of personal property from Mr. McNeil and the vehicle.

178.    Defendants Garry and Davidson continued to search Mr. McNeil's vehicle and property, and destroyed and seized items of personal property from Mr. McNeil and the vehicle without lawful authority.

179.    As a direct and proximate result of Defendants Garry and Davidson's unlawful actions as alleged herein, Defendants deprived Mr. McNeil of his rights under the Fourth and Fourteenth Amendment to be free from unreasonable search and seizure.

180.    Defendants Garry and Davidson's conduct was outrageous, intentional and malicious, or at the very least grossly negligent, exhibiting a reckless disregard and deliberate indifference for Mr. McNeil's rights.

181.    Defendants Garry and Davidson's initial pullover of Mr. McNeil's vehicle as well as Defendants' subsequent search and seizure of Mr. McNeil's vehicle and property was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

182.    As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

183.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE FIRST AMENDMENT
### First Amendment Retaliation under 42 U.S.C. § 1983
### Against All Defendants

184.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 178 of this verified complaint as if fully set forth herein.

185.    Mr. McNeil protested and stated that he wished to file a complaint against Officers John Davidson and Patrick Garry for their pretextual traffic stop and subsequent illegal search of Mr. McNeil's vehicle that resulted in damage to his property and vehicle.

186.    Mr. McNeil's speech was noncommercial and was protected by the First Amendment.

187.    Mr. McNeil's speech did not violate any law.

188.    In retaliation for Mr. McNeil's speech, the Defendants threatened to, and did, arrest Mr. McNeil for possession of contraband without reason or probable cause to believe that Mr. McNeil committed such a crime.

189.    Defendants' conduct and actions, including the false arrest of Mr. McNeil, was motivated and/or substantially caused by Mr. McNeil's speech by virtue of the statement he made to the Defendants that he would like to file a complaint against Officers Garry and Davidson.

190.    The conduct and actions of the Defendants were done intentionally, maliciously, with deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts.

191.    But for Defendants' retaliatory animus regarding Mr. McNeil's speech, the Defendants would not have arrested Mr. McNeil.

192.    But for Defendants' retaliatory animus regarding Mr. McNeil's speech, the Defendants would not have issued a criminal complaint against Mr. McNeil for allegedly violating Section 220.06(5) of the New York State Penal Code.

193.    Defendants did not have probable cause or even a reasonable suspicion to believe that Mr. McNeil violated Section 220.06(5) of the New York State Penal Code.

194.    Defendants conduct and actions were done without lawful justification or reason and caused Mr. McNeil injury.

195.    As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

196.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
#### Unreasonable Search and Seizure under 42 U.S.C. § 1983
#### Against Defendant Garry

197.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 191 of this verified complaint as if fully set forth herein.

198.   At all relevant times, Mr. McNeil enjoyed and possessed a right under the Fourth and Fourteenth Amendment of the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in his person, vehicle, personal effects, and property.

199.   As described above, on April 6, 2020, Defendant Garry unlawfully and unreasonably entered and searched Mr. McNeil and his vehicle and property, without lawful authority in the form of probable cause or a validly issued judicial search warrant naming Mr. McNeil or the vehicle.

200.   Defendant Garry, unreasonably and without probable cause or reasonable suspicion to believe that Mr. McNeil committed a violation of the laws of New York State, pulled over Mr. McNeil's vehicle and searched his vehicle and property, and destroyed and seized items of personal property from Mr. McNeil and the vehicle.

201.   Defendant Garry continued to search Mr. McNeil's vehicle and property, and destroyed and seized items of personal property from Mr. McNeil and the vehicle without lawful authority.

202.   As a direct and proximate result of Defendant Garry's unlawful actions as alleged herein, Defendant Garry deprived Mr. McNeil of his rights under the Fourth and Fourteenth Amendment to be free from unreasonable search and seizure.

203.   Defendant Garry's conduct was outrageous, intentional and malicious, or at the very least grossly negligent, exhibiting a reckless disregard and deliberate indifference for Mr. McNeil's rights.

204.   Defendant Garry's initial pullover of Mr. McNeil's vehicle as well as Defendant Garry's subsequent search and seizure of Mr. McNeil's vehicle and property was not

otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

205.   As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

206.   The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS
### Failure to Intervene under 42 U.S.C. § 1983
### <u>Against All Defendants</u>

207.   Mr. McNeil incorporates the allegations contained in paragraphs 1 through 201 of this verified complaint as if fully set forth herein.

208.   The Defendants failed to take reasonable steps to prevent their fellow officers from engaging in the illegal acts alleged herein, though they were present at the scene of such violations and were capable of doing so.

209.   The Defendants' actions violated Mr. McNeil's Constitutionally-protected rights under the First, Fourth, and Fourteenth Amendments.

210.   The Defendants knew, or reasonably should have known, that their conduct violated Mr. McNeil's clearly established Constitutionally-protected rights.

211.   The Defendants acted with intent to violate, or with deliberate or reckless indifference to, Mr. McNeil's clearly established rights under the First, Fourth, and Fourteenth Amendment.

212.    At all times relevant herein, the Defendants were acting under the color of state or federal law.

213.    As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

214.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## EIGHTH CLAIM FOR RELIEF

### VIOLATION OF FOURTEENTH AMENDMENT
### Violation of Mr. McNeil's Right to Due Process of Law under 42 U.S.C. § 1983
### Against All Defendants

215.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 209 of this verified complaint as if fully set forth herein.

216.    At all relevant times, Mr. McNeil enjoyed a right under the Fourteenth Amendment of the Constitution of the United States to not be deprived of life, liberty, or property without due process of law.

217.    By providing the Buffalo News with false information that Mr. McNeil possessed crack cocaine on May 27, 2019 and left said crack cocaine in the back of Defendants Garry and Davidson's patrol vehicle, the Defendants violated Mr. McNeil's due process rights by stigmatizing Mr. McNeil's reputation.

218.    Prior to the news story being published, Mr. McNeil did not have an opportunity to contest the evidence and information Defendants fraudulently claimed proved Mr. McNeil's guilt, and Mr. McNeil had not been convicted of any crime relating to his May 27, 2019 arrest.

219.    The stigma to Mr. McNeil's reputation substantially interfered with Mr. McNeil's ability to receive public assistance.

220.    The stigma to Mr. McNeil's reputation caused by the Defendants without due process is a violation of Mr. McNeil's rights under the Fourteenth Amendment.

221.    As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

222.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## NINTH CLAIM FOR RELIEF

### VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS
### Conspiracy to Violate Mr. McNeil's Constitutional Rights
### <u>Against All Defendants</u>

223.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 217 of this verified complaint as if fully set forth herein.

224.    By and through the actions described above, Defendants, acting under the color of state law, conspired to deprive Mr. McNeil of his constitutional rights as guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

225.    Defendants conspired amongst themselves to fabricate a story that Mr. McNeil left crack cocaine in the backseat of Defendants Garry and Davidson's patrol vehicle because Mr. McNeil wanted to bring a complaint against Defendants Garry and Davidson for their unreasonable search and seizure of his vehicle.

226.    Defendants agreed to deprive Mr. McNeil of his constitutional rights and deprived him of his constitutional rights by falsely charging Mr. McNeil with a violation of

Section 220.06(5) of the New York State Penal Code and then intimidated Mr. McNeil with threats and continuous harassment thereby causing Mr. McNeil pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

227.    As a direct and proximate result of the foregoing, Mr. McNeil was damaged and injured in an amount to be determined at trial.

228.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

**TENTH CLAIM FOR RELIEF**

**VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS**
**Policy, Custom, and Practice of Defendants and**
**Failure to Supervise and Train under 42 U.S.C. § 1983**
**<u>Against The City of Buffalo</u>**

229.    Mr. McNeil incorporates the allegations contained in paragraphs 1 through 223 of this verified complaint as if fully set forth herein.

230.    Prior to May 27, 2019, Defendants developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in the City of Buffalo, which caused the violation of Mr. McNeil's rights.

231.    At all relevant times, Defendants, the City of Buffalo and Police Commissioner Byron Lockwood were aware that Officer Davidson, Officer Garry, Officer Burvid, Officer Vaughn, Lt. Velez, Lt. Boice, and Lt. McHugh were inadequately trained regarding the First, Fourth, and Fourteenth Amendment, yet Defendants, the City of Buffalo and Police Commissioner Byron Lockwood maintained a policy or custom of failing to provide Officer Davidson, Officer Garry, Officer Burvid, Officer Vaughn, Lt. Velez, Lt. Boice, and Lt. McHugh training on the First, Fourth, and Fourteenth Amendment or adequate supervision.

232.    It was the policy, custom, or both of Defendants the City of Buffalo and Police Commissioner Byron Lockwood to inadequately to supervise and train its police officers, including Officer Davidson, Officer Garry, Officer Burvid, Officer Vaughn, Lt. Velez, Lt. Boice, and Lt. McHugh, thereby failing to prevent the constitutional violations against Mr. McNeil.

233.    Defendants failed to properly screen its officers and retained officers who have a history of inappropriate and unlawful acts, and Defendants have failed to properly train and supervise members of the City of Buffalo Police Department, and failed to provide proper procedures and policies of the Department, including (i) procedure to properly determine when officers have reasonable suspicion and/or probable cause to pull over a vehicle; (ii) procedure for reading an individual his or her Miranda Rights before demanding the individual provide the officer with incriminating information; (iii) procedure for accurately reporting an officer's basis for believing there is probable cause to search an individual's vehicle; (iv) procedure for responding to an individual's complaint who believes that the City of Buffalo police officers violated his/her First, Fourth, and/or Fourteenth Amendment rights; (v) procedure for presenting credible evidence that an individual committed a crime; (vi) procedure for not searching a vehicle in the absence of probable cause or reasonable suspicion that the individual committed a crime; (vii) procedure for not pulling an individual out of his/her car, placing handcuffs on his/her wrists, and forcing said individual to sit in the back of a patrol vehicle unless there is probable cause or reasonable suspicion to believe that an individual may have contraband in his/her vehicle; (viii) procedure for telling an individual why he/she has been pulled over when that individual asks the officer; and (ix) procedure for properly searching an individual's car without causing damage to his/her vehicle.

234.    Upon information and belief, Defendants the City of Buffalo, Police Commissioner Byron Lockwood, Lt. Velez, Lt. Boice, and Lt. McHugh maintained a policy, custom, or practice of retaliating against individuals who lawfully object to police actions or behave in a way that officers perceive as disrespectful.

235.    It was the policy, custom, or both of Defendants the City of Buffalo and Police Commissioner Byron Lockwood to promote police officers who have had multiple complaints lodged against them by City of Buffalo residents thereby exhibiting deliberate indifference to the constitutional rights of persons in the City of Buffalo and which contributed to the constitutional violations against Mr. McNeil.

236.    Upon information and belief, Lt. Velez, Lt. Boice, and Lt. McHugh had numerous complaints lodged against them by City of Buffalo residents before they were promoted to the position of Lieutenant.

237.    For example, a few months before Defendant Velez was promoted to Lieutenant, she was named in the lawsuit of *Kistner v. The City of Buffalo, et al.* (File No. 18-CV-00402).

238.    Defendant Velez was the passenger in the patrol vehicle that can be seen on video striking Plaintiff Jim Kistner.

239.    To cover up their strike of Mr. Kistner, Defendant Velez participated in a conspiracy to falsely claim that Mr. Kistner threw himself at the patrol vehicle and thereafter charged Mr. Kistner with criminal violations.

240.    Defendant Velez signed a 9.41 form in an attempt to have Mr. Kistner involuntarily committed for a mandatory 10-day psychiatric evaluation under New York's Mental Hygiene Law.

241.    The City of Buffalo and all Defendants named in the action, including Commissioner Byron Lockwood, were presented with a video depicting the events when they were served with Mr. Kistner's complaint.

242.    Not only was Defendant Velez and the other officers involved not disciplined for their false arrest and malicious prosecution of Mr. Kistner, Defendant Velez was in fact promoted to the position of Lieutenant.

243.    To date, no disciplinary action has been taken against Defendant Velez or any of the other C-District officers who participated in the false arrest of Mr. Kistner on January 1, 2017.

244.    The lack of discipline for the officers who are seen on video conspiring to violate Mr. Kistner's constitutional rights is consistent with the policy and custom of the City of Buffalo to not discipline their officers.

245.    In 2017, it was found that 94% of all complaints against City of Buffalo police officers resulted in no disciplinary action against the officers involved.

246.    Upon information and belief, that 2017 statistic is consistent with the staggering lack of discipline and accountability for current City of Buffalo police officers.

247.    Further, Lt. McHugh has been the Lieutenant for the C-District Precinct for nearly a decade.

248.    Upon information and belief, Lt. McHugh has used his position of authority to help perpetuate a policy and/or custom to not discipline C-District police officers who violate the constitutional rights of City of Buffalo citizens.

249.    Upon information and belief, Lt. McHugh has consistently and repeatedly used his position of authority to help cover up civil complaints brought against C-District police officers accused of violating the rights of City of Buffalo residents.

250.    That policy and custom has continued and has been carried out by newly appointed C-District Lieutenants, including Defendant Velez and Defendant Boice.

251.    Upon information and belief, Lt. McHugh, Lt. Velez, and Lt. Boice have and continue to encourage C-District officers to retaliate against those who bring lawful complaints against C-District officers who abuse their position of authority.

252.    Defendants the City of Buffalo and Police Commissioner Byron Lockwood knew, or should have known, that officers in the C-District Precinct had and continue to have such a policy and custom of unlawful retaliation, but they choose to not put a stop to this unlawful practice.

253.    In addition, Defendants the City of Buffalo and Police Commissioner Byron Lockwood implemented a policy and/or custom that targets minorities for traffic infractions

254.    This policy and/or custom has been implemented by City of Buffalo Districts, including, upon information and belief, the City of Buffalo's C-District.

255.    Pursuant to said policy and custom, Defendants the City of Buffalo and Police Commissioner Byron Lockwood reward officers for writing as many tickets as possible in low income areas of the City of Buffalo.

256.    Pursuant to said policy and custom, City of Buffalo police officers pull over people of color without probable cause or reasonable suspicion to believe a violation of New York State's Vehicle and Traffic Laws has been violated.

257.     Pursuant to said policy and custom, to cover up the fact that they pulled over a minority driver without lawful authority in the form of probable cause or reasonable suspicion to believe a violation of New York's Vehicle and Traffic Laws had been committed, the officers will issue a ticket for correctable equipment.

258.     Pursuant to said policy and custom, City of Buffalo police officers use these tactics to search an individual's vehicle for contraband.

259.     Recognizing the existence of said policy and custom, the City of Buffalo implemented on June 24, 2020 a reform measure requiring all City of Buffalo police officers to immediately tell the driver of a stopped vehicle the reason for the stop, and issue paperwork detailing the reason for the officer's stop of a vehicle in the City of Buffalo.

260.     Defendants the City of Buffalo and Police Commissioner Byron Lockwood ratified and acquiesced in the unlawful conduct of the other Defendants herein, as evidenced by their failure to investigate and discipline officers who adhere to this policy and/or custom, their failure to discipline the Defendants, and by their refusal to investigate the underlying false arrest of Mr. McNeil on May 27, 2019.

261.     As a direct and proximate result of the Defendants' policies, customs, and practices, Mr. McNeil was damaged and injured in an amount to be determined at trial.

262.     The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. McNeil claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## DEMAND FOR JURY TRIAL

263.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, Bruce C. McNeil, prays for relief and demands judgment as follows:

1.    That Mr. McNeil be awarded compensatory damages against all Defendants in an amount to be determined at trial;

2.    That Mr. McNeil be awarded punitive damages against all Defendants in an amounted to be determined at trial;

3.    That this Court, pursuant to 42 U.S.C. §1988, issue an order awarding Plaintiff reasonable attorneys' fees, together with the costs of this action against all Defendants; and

4.    That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:    June 24, 2020
          Buffalo, New York

RUPP BAASE PFALZGRAF CUNNINGHAM LLC
*Attorneys for Plaintiff*


/s/ R. Anthony Rupp III
R. Anthony Rupp III, Esq.
Chad A. Davenport, Esq.
1600 Liberty Building
Buffalo, New York  14202-3694
Phone:  (716) 854-3400
*rupp@ruppbaase.com*
*davenport@ruppbaase.com*

## **VERIFICATION**

STATE OF NEW YORK     )
                               : ss.:
COUNTY OF ERIE          )


       Bruce C. McNeil, being duly sworn, deposes and says that he is the Plaintiff named in the within entitled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.


_____
Bruce C. McNeil, Plaintiff

Sworn to before me this
24 day of June, 2020.

CHAD ALAN DAVENPORT
Notary Public, State of New York
No. 02DA6401208
Qualified in Erie County
Commission Expires 12/09/2023

Notary Public