**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**BRUCE C. MCNEIL,**

                **Plaintiff,**

      **-v-**                             **20-CV-0998V(Sr)**

**THE CITY OF BUFFALO,**

**JOHN DAVIDSON, individually and**
**in his capacity as a Buffalo Police Officer,**

**PATRICK GARRY, individually and**
**in his capacity as a Buffalo Police Officer,**

**ANTHONY BURVID, individually and**
**in his capacity as a Buffalo Police Officer,**

**JENNY VELEZ, individually and**
**in her capacity as a Buffalo Police Officer,**

**ANTHONY McHUGH, individually and**
**in his capacity as a Buffalo Police Officer,**

**PATRICK BOICE, individually and**
**in his capacity as a Buffalo Police Officer,**

**and**

**MATTHEW VAUGHN, individually and**
**in his capacity as a Buffalo Police Officer,**

                **Defendants.**

---

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #14.

This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, arising out of several encounters between plaintiff and officers of the Buffalo Police Department ("BPD"). Dkt. #1.

Currently before the Court is plaintiff's motion to compel. Dkt. #36.

## BACKGROUND

### *Plaintiff's Claims*

The factual background of this matter was set forth in a prior Report, Recommendation and Order, Dkt. #19, and it is incorporated here.

Briefly, plaintiff's claims are premised on his encounters with Buffalo Police Officers ("BPOs") on May 27, 2019, when he was arrested on allegedly fabricated charges of which he was subsequently acquitted; on April 4, 2020, when defendant BPO Patrick Garry ("Garry") made certain remarks to plaintiff; and on April 6, 2020, when Garry pulled plaintiff over, placed him in handcuffs, searched his vehicle, and then released him after finding no contraband. Dkt. #19, pp. 4-5.

After motion practice directed at the pleadings, the following claims remain: (1) false arrest against all defendants[1]; (2) false imprisonment against all defendants; (3) malicious prosecution against all defendants; (4) unreasonable search and seizure against Garry and defendant John Davidson ("Davidson") based on the May 27, 2019 encounter; (5) First Amendment retaliation against all defendants; (6) unreasonable search and seizure against Garry based on the April 6, 2020 encounter; (7) failure to intervene against all defendants; (8) denial of due process against all defendants; (9) conspiracy to violate plaintiff's constitutional rights against all defendants; and (10) policy, custom, or practice and failure to supervise and train against the City of Buffalo. Dkt. ##19, 20.

Also relevant to the present discovery dispute are plaintiff's allegations that defendants have a custom or practice of retaliating against individuals who lawfully object to police actions. Dkt. #1, ¶ 234. Further, plaintiff alleges that defendants have a policy or custom of targeting people of color for traffic infractions and of writing as many tickets as possible in low-income areas in the City of Buffalo. Dkt. #1, ¶¶ 253-259.

### Discovery Background

On May 8, 2023, plaintiff served defendants with his First Document Requests and First Set of Interrogatories. Dkt. ##36-11, 36-12. On June 8, 2023, defendants served their responses and objections to these requests. Dkt. ##36-5, 36-6.

---

[1] Only individual capacity claims against the individual officers remain. Dkt. #20, pp. 2-3.

In addition to other objections, which are discussed below, defendants stated in response to all but two of the twenty-five document requests: "Without waiving any general or specific objections, **the Defendants are aware of the materials saved to the enclosed disk, which may be responsive to this demand**." Dkt. #36-5, *passim* (emphasis added). The disk to which defendants referred contained almost 3,000 pages. Dkt. #36-1, ¶ 3.

Similarly, in response to twenty-one of the twenty-five interrogatories, defendants stated: "Without waiving any general or specific objections and to the extent that the interrogatory is understood, **the Defendants refer to the documents provided in response to "PLAINTIFF'S FIRST DOCUMENT REQUEST" for its [sic] response to this interrogatory**." Dkt. #36-6, *passim*. In response to another interrogatory, defendants again relied on the documents provided in response to plaintiff's document request, albeit with different wording. Dkt. #36-6, p. 12.

On July 26, 2023, plaintiff's counsel sent defendants' counsel a deficiency letter stating that defendants' responses provided either no responsive information or incomplete information. Dkt. #31-4. Plaintiff's counsel noted that much of the information sought was relevant to their *Monell* claim against the City of Buffalo which alleges, *inter alia*, that the City has a "disturbing tendency not only to refuse to discipline problematic officers, but also to promote these officers who have a history of misconduct, and who continue to have serious complaints lodged against them with little to no investigation."

Dkt. #31-4, p. 2. In this regard, plaintiff's counsel requested specific Internal Affairs ("IA") investigative files concerning complaints against the individual defendants. *Id.*

On September 14, 2023, defendants' counsel sent plaintiff's counsel copies of the defendants' "Disciplinary Cards," but they did not provide any information about the investigations into defendants' conduct. Dkt. #31-1,  ¶ 6; Dkt. #31-5.

Between September 22, 2023 and mid-December 2023, counsel continued to confer. Plaintiff narrowed the list of IA files sought, and defendants' counsel repeatedly represented that the files would be produced. However, defendants did not produce these documents. Dkt. #31-1, ¶¶ 7-15; Dkt. ##31-6 to 31-13.

On December 20, 2023, plaintiff filed a motion for extension of the case management deadlines on the basis that he could not adequately prepare for depositions without the requested documents. Dkt. #31. The Court granted that motion and entered new case deadlines on January 11, 2024. Dkt. #32.

Plaintiff's counsel avers that it ultimately took over seven months for defendants to produce the IA files in question. Dkt. #36-1, ¶ 4.

Plaintiff then began taking depositions. Based on certain deposition testimony, plaintiff sent another deficiency letter to defendants' counsel on March 6, 2024. Dkt. #36-2. Plaintiff outlined deficiencies in defendants' responses; requested substantive

responses by March 27, 2024, failing which plaintiff would file a motion to compel; noted that the IA files produced were missing documents and requested the complete files; and noted other objections to defendants' responses, including defendants answering requests by referring to the disk "document dump" and stating that its contents "may be responsive" to plaintiff's requests. *Id*.

Defendants' counsel never responded to plaintiff's March 6, 2024 letter, stating that he had "missed" it. Dkt. # 36-3, pp. 2-3.

On March 22, 2024, plaintiff served defendants with a Notice to Inspect the BPD C-District Stationhouse, and plaintiff's counsel avers defendants never responded to that notice. Dkt. #36-1, ¶ 18.

On April 5 and 9, 2024, counsel conferred about the March 6 deficiency letter and plaintiff's second set of document requests. Dkt. #36-1, ¶ 8. Plaintiff's counsel avers defendants agreed to provide supplemental responses to plaintiff's first set of discovery requests and unredacted copies of certain documents regarding plaintiff, but they have not done so. Dkt. #36-1, ¶¶ 9-11.

## DISCUSSION AND ANALYSIS

### Legal Standards

Pursuant to Fed. R. Civ. P. 26, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Duhaney v. TransUnion, LLC*, 23-CV-04066 (NJC) (JMW), 2024 WL 85074, at *1 (E.D.N.Y. Jan. 8, 2024) (citation and internal quotation marks omitted). Relevance, "for purposes of discovery, is an extremely broad concept." *Carlyle Aviation Mgmt. Ltd. v. Frontier Airlines, Inc.*, 23 Civ. 4774 (PAE), 2023 WL 8472725, at *1 (S.D.N.Y. Dec. 7, 2023) (citation and internal quotation marks omitted).

"Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." *Rhodes v. Phoenix Arms*, 1:20-CV-267 (GTS/CFH), 2022 WL 2079088, at *2 (June 9, 2022) (citation and internal quotation marks omitted). "Generally, discovery is only limited when sought in bad faith, to harass or oppress the party subject to it, [or] when it is irrelevant or privileged." *Id.*

**Plaintiff's First Set of Document Requests**

*Preliminary Matters*

Before turning to plaintiff's individual document requests, the Court will address two general problems with defendants' responses.

First, plaintiff argues that defendants' responses based on the "document dump" disk containing nearly 3,000 pages, without specifying which document is responsive to which request, are improper. Dkt. #36-13, pp. 6-7. The Court agrees.

In accord with Fed. R. Civ. 34(b)(2)(E)(i), courts "routinely require responding parties to provide documents in some kind of organized, indexed fashion rather than as a mess of undifferentiated, unlabeled documents." *Capaccio v. Zafuto*, 23-CV-540-JLS(F), 2025 WL 723207, at *3 (W.D.N.Y. Mar. 6, 2025) (citations and internal quotation marks omitted). "Accordingly, where documents produced were not organized and labeled to correspond to the categories specified in the document requests in response to which the documents were produced, courts have directed the producing party to re-produce the documents, Bates-stamped, with an itemized list which sets forth, by [B]ates-number, the documents responsive to each of the [document] requests." *Id*.

In *Capaccio*, this Court found that defendants' response to a document request—which consisted of a 47-page PDF file, an MP3 audio file, screenshots, and 107

pages of documents—and which failed to state to which of Plaintiff's requests any of the documents were responsive violated Rule 34(b)(2)(E)(i). *Id.* at *4.[2]

Here, defendants' production of a disk containing nearly 3,000 documents, without identifying which are responsive to each of plaintiff's twenty-five document requests, also violates this rule.

Second, defendants' general objections "are ineffective because they fail to provide specific support for Defendants' assertions of vagueness, undue burdensomeness and overbreadth." *Id. See also Mills v. Steuben Foods, Inc.*, 19-CV-1178WMS(F), 2023 WL 179579, at *1 (W.D.N.Y. Jan. 13, 2023) ("An objection based on burdensomeness requires a specific showing of burdensomeness.") (citation omitted).

Defendants assert, in response to each of plaintiff's twenty-five document requests, that they are "overly broad, burdensome, [and] vague." Dkt. #36-5, *passim*. However, defendants offer no support for these assertions, and they are thus improper. *See Matalavage v. Sheriff of Niagara Cnty.*, 20-CV-1254Sk(F), 2023 WL 2043865, at *17 (W.D.N.Y. Feb. 16, 2023) ("Insofar as Defendants initially assert only bald and conclusory, boilerplate arguments that the information requested. . .is overly broad, unduly burdensome, and either irrelevant or not proportional to the issues in this case, such generalized objections are insufficient and require an affidavit by someone with the

---

[2] The Court notes that the parties in *Capaccio* were represented by the same offices representing the parties in this matter.

requisite knowledge to attest explaining in detail the basis for the objection.") (citation omitted).

### Request No. 1

Plaintiff's first document request seeks: "All accident reports, witness statements, depositions, complaints, informations, investigation materials, certificates of disposition, notices of claim, and criminal and civil litigation documents concerning the incidents." Dkt. #36-5, p. 5.

Plaintiff avers that, in response to this request, defendants provided two IA files, but that it became clear during discovery that there were documents missing from the files. Dkt. #36-1, ¶ 21.[3]

In opposition to plaintiff's motion, defendants assert that they have provided full copies of the IA files and that "if it has not been turned over it does not exist." Dkt. #39, p. 5. However, such an unsupported, conclusory assertion is an insufficient response to a motion to compel. *N.Y. Cent. Mut. Fire Ins. Co. v. Nissan N. Am., Inc.*, 22-CV-272WMS(F), 2023 WL 6304721, at *5 (W.D.N.Y. Sept. 28, 2023) ("Plaintiff's response that 'all non-privileged documents responsive to the RFP. . .have been produced' is

---

[3] In his reply brief, plaintiff states that some deponents testified that certain documents should be found in the files concerning plaintiff's complaints to the BPD regarding the incidents in question. Dkt. #46, p. 8. The Court has reviewed the cited testimony and concludes that it supports this assertion, in part. Robert Rosenswie, retired Police Inspector for the City of Buffalo, testified that a closing letter to a citizen complainant should be found in IA files. Dkt. #38-3, p. 001757. Plaintiff also cites to the testimony of BPD Captain Jason Whitenight, but that testimony appears to concern an incident on January 30, 2024, when BPD officers allegedly searched plaintiff's property, not the incidents in 2019 and 2020. Dkt. #38-3, p.001357. The cited testimony of retired BPD Commissioner Byron Lockwood also does not appear to support plaintiff's assertion. Dkt. #38-3, p. 1503.

evasive and non-responsive.") (citation omitted). *See also Capaccio*, 2025 WL 723207, at *5 (responses to document requests are inadequate where they fail to indicate that they "are based on a reasonable search for any responsive documents in Defendants' possession or control") (citation omitted).

Accordingly, defendants will be ordered to supplement this response, as discussed below.

### *Request No. 2*

Plaintiff's second document request seeks: "All documents concerning the defendants' records of calls made on the day of the incidents, including any and all dispatch monitors and complaint summary reports." Dkt. #36-5, p. 5.

Plaintiff avers that defendants have produced only records of defendants' calls to dispatch on the days in question but not records of calls among themselves or to others. Dkt. #36-1, ¶ 22. In his papers, plaintiff narrows this request to seek only documents concerning phone calls related to any "police work" that defendants engaged in on May 27, 2019, April 2, 2020, and April 6, 2020. Dkt. #36-13, p. 8. Plaintiff also purports to "narrow" the request by seeking a list of phones that defendants used from May 2019 to the present, with information regarding when the phones were active and what data carried over to successor phones. *Id.* Finally, plaintiff clarifies that he does not direct this request at dismissed defendant Byron Lockwood. Dkt. #46, p. 8.

In their response, defendants state that they "have requested all radio calls related to the incidents alleged and produced the same." Dkt. #39, p. 6. For the reasons stated above, however, this conclusory assertion is insufficient. Defendants will be ordered, as discussed below, to supplement their response to state, *inter alia*, what steps they took to ascertain the existence of such records. *See N.Y. Cent. Mut. Fire Ins. Co.*, 2023 WL 6304721, at *4.

Defendants also object to producing "personal phone records." Dkt. #39, p. 6. However, plaintiff has narrowed this request to calls related to "police work" on the dates in question, which the Court understands not to encompass communications on personal, non-police matters. The Court will also allow defendants to redact the phone numbers of any calls or texts that were not related to the performance of their duties as police officers.

In addition, defendants argue that there is no basis to seek documents regarding calls about police work made by defendants other than Garry on April 2 and 6, 2020. The Court disagrees. Plaintiff has plausibly alleged that all individual defendants conspired to falsely charge him with possession of crack cocaine if he persisted in filing a complaint against Garry and Davidson, in violation of his rights under the First and Fourteenth Amendments. Dkt. #19, pp. 14-17. This document request thus satisfies the relevance requirements of Rule 26(b)(1) as to all defendants.

Finally, however, the Court concludes that plaintiff's request for a list of phones used by defendants from May 2019 to present, with accompanying information, is not a "narrowing" of this document request. Instead, it broadens the scope of the request, and the Court will not compel such production within the parameters of the present motion.

Defendants will thus be ordered to supplement their responses to this request, as discussed below.

### Request No. 3

Plaintiff's third document request seeks, as narrowed by plaintiff's motion:

All documents concerning defendants' employment with the City of Buffalo, including, without limitation, applications, reference and background check results; resumes or curriculum vitae; any other documents concerning hiring; reviews; documents concerning job offers; promotions, demotions, transfers, and layoffs; records confirming fitness for duty; pay and compensation documents; commendations, awards or letters of recognition; verbal or written warnings, counseling, reprimands, or other discipline; goal-setting records; [and] workplace investigation documents.

Dkt. #36-5, p. 5, Dkt. #36-13, p. 9.

In his motion to compel, plaintiff states that he is seeking twenty-five IA files that he previously requested but which defendants have not provided. These files pertain to prior investigations involving the individual defendants as follows: McHugh (5); Boice

(12); Velez (2); Davidson (2); Burvid (1); Vaughn (1); and Garry (4). Dkt. #36-13, pp. 8-9.[4]

In turn, defendants state that this request is "overbroad, unduly burdensome, and not material and necessary in the prosecution of this action." Dkt. #39, p. 9. As noted, such a conclusory assertion is no defense to a document request. And, although defendants also state that the request would be burdensome due to the "number of files that would have to be requested, copied, and produced," Dkt. #39, p. 7, this too lacks the necessary specificity. *See, e.g., Black Love Resists in the Rust by and through Soto v. City of Buffalo*, 334 F.R.D. 23, 29 (W.D.N.Y. 2019) (requiring production of information despite defendants' contention that it would be unduly burdensome; defendants failed to quantify "that burden in terms of the number of documents subject to collection and review or the amount of time and manpower that would be reasonably required to comply with the requests") (citation and internal quotation marks omitted).

Next, defendants assert that "there has been no offer of proof or explanation as to why these specifically identified "Internal Affairs" files are discoverable or relevant." Dkt. #39, p. 7. That is not true. Plaintiff explained during the meet-and-confer process that these files are relevant to plaintiff's *Monell* claim. Dkt. #36-2, p. 6. The Court agrees.

"In *City of Canton, Ohio v. Harris*, the Supreme Court established that a municipality can be liable for failure to train its employees where it acts with deliberate

---

[4] Two of the IA files pertain to two defendants.

indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Brown v. Village of Endicott*, 3:21-CV-1186 (MAD/TWD), 2025 WL 863105, at *41 (N.D.N.Y. Mar. 19, 2025) (citation and internal quotation marks omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* "Policymakers' continued adherence to an approach they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability." *Id.*

A similar analysis applies to claims that a municipality had notice of complaints of unconstitutional acts by its employees "but repeatedly failed to make any meaningful investigation into such charges." *Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018) (citation omitted). In such cases, "a given officer's disciplinary history may be probative of whether it was foreseeable to the municipality that the officer would engage in misconduct yet again." *Id. See also Holloway v. City of New York*, 21 CV 3858 (AMD) (CLP), 2025 WL 745991, at *7 (E.D.N.Y. Mar. 7, 2025) ("In federal civil rights cases, misconduct records are presumptively relevant and discoverable.") (citation and internal quotation marks omitted); *Black Love Resists*, 334 F.R.D. at 33 ("In a case alleging deliberate indifference, prior complaints made against defendants, whether substantiated or not, are discoverable. . .so long as the complaints are similar to the

constitutional violations alleged in the complaint.") (citation and internal quotation marks omitted).[5]

In *Black Love Resists*, the Court found that police officers' IA files were relevant to plaintiffs' § 1983 claims for violation of their rights under the Fourth and Fourteenth Amendments based on alleged racial and ethnic discrimination in the City of Buffalo's traffic enforcement practices. *Id.* at 25-26. Further, the Court found that production of 168 IA files was not unduly burdensome, and that "because evidence of the sufficiency of internal investigations may be probative of deliberate indifference, the entirety of the IAD file is discoverable." *Id.* at 34.

However, recognizing the officers' privacy concerns, the Court noted that either *in camera* review or an "attorneys'-eyes-only production" would be warranted. *Id.* at 35. The Court ordered that plaintiffs could elect between those two options, and it granted the motion to compel production of the IA files. *Id.*

The Court thus finds well taken plaintiff's motion to compel as to his third document request. Plaintiff shall elect between the submission of the relevant files for an *in camera* review or production of the files subject to a protective order limiting disclosure of the files to attorneys' eyes only. Plaintiff shall notify defendants of his election **within fifteen (15) days** of entry of this Decision and Order. Defendants shall then have **fifteen (15) days** to produce the relevant files to plaintiff or the Court.

---

[5] For the same reasons, the Court finds defendant's proportionality argument to be without merit.

*Request No. 5*

Plaintiff's fifth request for production of documents, as narrowed by his motion, seeks all documents concerning the BPD's "policies, procedures, regulations, instructions, or guidance" concerning: handcuffing; transporting people who are arrested, in custody, or otherwise being transported in police vehicles; assistance to officers; employee investigations and discipline; incident reporting; fair and impartial policing; fitness-for-duty evaluations; and completing supporting documents for tasks undertaken by them in their duties. Dkt. #36-5, pp. 7-8; Dkt. #36-13, p. 9. Plaintiff seeks these documents that were in effect in May 2019, April 2020, and currently. *Id.*

In response to plaintiff's motion, defendants state that these topics are set forth in the BPD's Manual of Procedures ("MOP"), the current version of which is posted on the BPD's website. Dkt. #39, p. 10. However, defendants concede that the current MOP "would not be the exact same MOP as was in effect in May of 2019 or April of 2020." Dkt. #39, p. 11. Defendants further state that they have produced versions of the MOP in effect in 2013, 2015, and 2017. Dkt. #39, pp. 10-11.

Thus, it is apparent that defendants have not fully responded to this request because they have not produced the listed items that were in effect in May 2019 and April 2020. And, while they argue that "this topic has also been explored at great length through deposition testimony," Dkt. #39, p. 10, that objection is improper. *Capaccio*, 2025 WL 723207, at *6 ("Depositions pursuant to Rule 30(a) are not the equivalent of Rule 34

document requests and Plaintiffs do not waive Plaintiffs' rights to pursue Rule 34(a)(1) requests by engaging in deposition practice.") (citation omitted).

Therefore, plaintiff's motion to compel as to this request will be granted, as discussed below.

### Request No. 6

Plaintiff's sixth document request seeks copies of all complaints, accusations, or concerns expressed about the defendants in their performance of their duties for the City of Buffalo including, but not limited to, civilian, internal, inmate, ombudsman, and external agency complaints. Dkt. #36-5, pp. 8-9. Plaintiff has narrowed the request to all complaints against defendants Garry, Davidson, Boice, and Velez since they became employed by the BPD and as to the BPD for the past ten years. Dkt. #36-13, p. 10.

Defendants responded to this request by referring to the document disk, Dkt. #36-5, p. 9, which the Court has already noted is improper.

In their opposition, defendants again assert an unsupported defense of burdensomeness, and they state that they have produced defendants' disciplinary cards and that, "upon information and belief, any complaints would be reflected on that record." Dkt. #39, pp. 11-12.

The balance of defendants' argument is puzzling. They state that it "is likely that additional records exist in relation to each internal affairs file" but that "a request for all of these records would not be warranted or [proportional] as set forth above." This objection is without merit for the reasons stated as to Request No. 3.

Finally, defendants assert: "To the extent that the demand is understood, Defendants are not aware of any other responsive documents." Dkt. #39, p. 12. This assertion is not only inconsistent with the preceding statement about internal affairs files, but it is also an improper response to a document request. *See Finkelstein v. Bical*, No. 23-CV-00049-LDH-SJB, 2023 WL 9119575, at *2 (E.D.N.Y. Dec. 14, 2023) ("Document requests are not memory tests. That a party is not aware of responsive documents does not remove its obligation to produce them. It must search for responsive documents, and then after performing a reasonable search, it can state it is not in possession of responsive documents.").[6]

Thus, defendants will be ordered to supplement their response to this request, as discussed below.

### Request No. 7

Plaintiff's seventh document request seeks all documents concerning the defendants' training while employed by the BPD. Dkt. #36-5, p. 9. Defendants again

---

[6] The Court does, however, agree with defendants that plaintiff's request for "a statement characterizing the purpose and nature of each complaint," Dkt. #36-5, p. 9, is improper under Rule 34.

~ 19 ~

improperly responded with an unsupported burdensome objection and reference to the document disk. *Id.*

Plaintiff states that defendants have produced some training materials, but that defendants testified in their depositions to other training for which documents have not been produced. Dkt. #36-13, p. 10.

In response, defendants again state that this topic has been explored in depositions, and that they are "unaware" of additional responsive documents. As noted above, these are improper responses.

Defendants will thus be ordered to supplement their response to this request, as discussed below.

### Request No. 9

This document request seeks all "photographs, video recordings, surveillance materials, or audio recordings concerning the plaintiff, or the incidents, including, without limitation, any vehicle or vest-recorded footage of any 911 calls." Dkt. #36-5, p. 10. Defendants' response to this request was deficient in the respects identified above regarding burdensome and reference to the document disk. Dkt. #36-5, p. 10.

Defendants state in their brief that they "do not believe" that any video was taken of the April 2, 2020 interaction with plaintiff; that they have not been able to locate

any such recordings from the BPD stationhouse from May 27, 2019; and that they have received no records in response to their request for 911 calls from Erie County Central Police Services. Dkt. #39, pp. 13-14.

However, plaintiff has produced evidence from an IA file which appears to show linked files, including videos from a body camera worn by Garry during the April 6, 2020 incident with plaintiff. Dkt. #46-2.

Defendants inexplicably do not address the issue of a video of the April 6, 2020 incident, although they state in response to Request No. 18 that all body camera footage for the April 6, 2020 incident has been produced. Dkt. #39, p. 17.

Defendants have an obligation to support any assertion that they have searched for responsive documents and have not located any with sworn affidavits from the persons who conducted such searches. *Capaccio*, 2025 WL 723207, at *6.

Defendants will thus be ordered to supplement their response to this document request, as discussed below.[7]

---

[7] The Court does not find well taken, however, plaintiff's assertion in his reply brief that defendants must produce their video retention policy for the BPD C-District station, Dkt. #46, p. 13, because that request was not included in Request No. 9.

***Requests 10 and 11***

These two requests seek all communications concerning the plaintiff, defendants, witnesses, or other parties concerning the incidents, including communications with The Buffalo News, as well as all statements made by plaintiff, defendants, witnesses, or other parties concerning the incidents. Dkt. #36-5, pp. 10-11.

Plaintiff states that the only documents defendants have produced in response to this request are two incomplete IA files regarding plaintiff's May 2019 and April 2020 complaints. Dkt. #36-13, p. 11. Plaintiff also states that defendant Velez testified in her deposition that she may have exchanged text messages with defendant Davidson about plaintiff's attempt to file a complaint, but no such text messages have been produced. Dkt. #36-13, p. 11. Further, defendants have not produced documents relating to an article in The Buffalo News concerning plaintiff's May 27, 2019 arrest. *Id.*

Defendants first assert that plaintiff is seeking "unlimited cell phone records." Dkt. #39, p. 14. This is incorrect. On their face, these two requests seek "communications" and "statements," as plaintiff clarified in his reply brief. Dkt. #46, p. 14.[8]

Defendants otherwise simply state that they have been unable to locate additional responsive records or will conduct additional searches. That is insufficient.

---

[8] The Court agrees, however, that plaintiff's request for a list of phones used since May 2019, and accompanying information is improper, as previously discussed.

The Court will thus grant the motion to compel as to these requests, as discussed below.

### Request No. 13

Request No. 13 seeks all other documents concerning plaintiff, not otherwise produced in response to these document requests. Dkt. #36-5, p. 12. Again, defendants made an unsupported burdensome objection and referred to the document disk.

Defendants state that they have produced records relating to plaintiff's past arrests and criminal charges, Dkt. #39, p. 15, but plaintiff argues that records produced in the context of IA files are not exhaustive. Dkt. #46, p. 15.

If defendants have conducted complete searches for documents responsive to this request and have produced all documents located, they will be able to file an affidavit so testifying. *Capaccio*, 2025 WL 723207, at *6.

The Court will thus grant the motion to compel as to this request, as discussed below.

### Requests No. 15 and 16

These two requests seek all "records and statistics maintained by the City of Buffalo concerning claims [of] misconduct or unreasonable searches and seizures

against officers for searching vehicles without a warrant or consent from individuals" and all "statistical summaries of the activities of the Buffalo Police Department Units produced by the Internal Affairs Division from 2010 to present." Dkt. #36-5, pp. 13-14.

In his motion, plaintiff clarifies that he is requesting charts, graphs, and any statistical summaries reflecting the data described in these requests. Dkt. #36-13, p. 12. Defendants object that these requests are vague and overly broad. The Court disagrees.

"Charts," "graphs," and "statistical summaries" are common and readily understandable terms. The same is true of the subject matter described in these requests.

Further, defendants' assertion that "those records could be contained in several databases and locations, and not in a central electronic record keeping system" is no defense to their obligation to produce them. *Black Love Resists*, 334 F.R.D. at 34 (noting that "the burden that results from disorganized record-keeping does not excuse a party from producing relevant documents") (citation and internal quotation marks omitted).

Despite the above protestations, defendants then state that "the only 'statistical summaries' assembled by the Defendants have previously been produced." Dkt. #39, p. 16. As discussed, however, such an assertion must be supported by affidavit.

Defendants will thus be ordered to supplement their responses to these requests, as discussed below.

In addition, because defendants raised several privileges in their responses to these requests, they shall state in their supplemental responses whether any documents are being withheld on that basis and, if so, they shall provide a privilege log. Loc. R. Civ. P. 26(d).

### *Request No. 18*

Request No. 18 seeks all "logs and other related documents maintained by the City of Buffalo concerning documents responsive to the plaintiff's document demands that have been destroyed or otherwise disposed of." Dkt. #36-5, p. 15.

Defendants state that the BPD body camera program had not been implemented as of May 27, 2019 and that they have found no body camera footage of the April 2, 2020 incident. Dkt. #39, p. 17. However, defendants have not confirmed by affidavit the nature of their search for documents responsive to this request, nor have they stated whether a retention policy, which plaintiff falls within the scope of this request, exists.

Defendants will thus be ordered to supplement their response to this request, as discussed below.

*Request No. 20*

This request seeks:

The cellular telephone records of Officer Garry and Officer Davidson beginning from the day of the accident [*sic*], May 27, 2019, through present, and an authorization to obtain each of their records from the date of the incidents through present. The authorizations should include the names and addresses of their respective carriers, the identification numbers for the accounts, and the phone numbers associated with the accounts.

Dkt. #36-5, p. 16. Defendant objected to this request as overly broad, vague, not likely to result in the production of admissible evidence" and subject to privileges. *Id.*

In his motion, plaintiff narrows this request to Garry and Davidson's cell phone records from May 27, 2019 to June 3, 2019 and from April 2, 2020 to April 13, 2020, and he seeks only records related to their police work. Dkt. #36-13, p. 12.

Defendants argue that the time periods are overbroad and burdensome, Dkt. #39, p. 17, but these are conclusory assertions. Plaintiff has narrowed this request to two very short time periods—eight days and twelve days—and defendants do not elaborate on how these requests are burdensome. Strangely, defendants then state that they are "unaware of what records are being requested" and thus cannot state whether they are asserting a privilege over the requested documents. Dkt. #39, p. 17. The Court is unpersuaded.

For the same reasons stated with respect to Request No. 2, the Court finds plaintiff's motion to compel well taken as to this request.[9] However, the Court again concludes that plaintiff's request for a list of phones and related information, Dkt. #36-13, p. 12, exceeds the scope of the request. In addition, the Court will again allow defendants to redact the phone numbers of any calls or texts that were not related to the performance of their duties as police officers.

Defendants will thus be ordered to supplement their response to this request, as discussed below.

### Request No. 22

Request No. 22 seeks a "copy of the defendants' union files or an authorization to obtain them, including the address of the union." Dkt. #36-5, p. 17.

Plaintiff avers that defendants' counsel informed her that he did not have access to his clients' union files and is unsure if his clients have access to them. Dkt. #36-1, ¶ 13. In their brief, defendants state that they "are not in possession or aware of any 'union files.'" Dkt. #39, p. 18.

As stated above, a party's statement that they are not "aware" of documents is an improper response. Moreover, Rule 34 requires that a responding party produce

---

[9] Although the parties do not mention the seeming redundancy between plaintiff's requests for these phone records and his additional request for authorizations to obtain the records, the Court will order defendants to obtain their own cell phone records, which may be redacted as stated above, and then produce them to plaintiff.

documents in the party's "possession, custody, or control." Fed. R. Civ.34(a)(1). Defendants' assertion that plaintiff must serve a third-party subpoena on the Buffalo Police Benevolent Association to obtain any files regarding defendants would thus not be well taken if defendants are members of that union and have access to their own files.

The Court will thus order defendants to supplement their response to this request, supported by an affidavit and clarification as to whether they are withholding any documents on the basis of privilege, as asserted in their original response. Dkt. #36-5, p. 17.

### Miscellaneous Points

For clarity of the record, defendants have agreed to produce unredacted records in lieu of documents that previously redacted plaintiff's own information. Dkt. #39, p. 18. Also, defendants clarify that they have produced responsive documents from all defendants, regardless of whether the documents were in the possession of all defendants. *Id.*

Therefore, **within 30 days** of entry of this Decision and Order, defendants shall supplement their responses to plaintiff's first set of document requests in accordance with Rule 34(b)(2)(E)(i) and the foregoing discussion. Specifically: (1) all documents produced shall be Bates-stamped, and the responses shall specifically identify to which of plaintiff's requests the documents are responsive; (2) the responses shall be accompanied by an affidavit by a person or persons who conducted the search for

documents, describing in reasonable detail how such searches were conducted; the locations of all potentially responsive documents searched; whether responsive documents were located and have been produced; and whether the searches are complete; and (3) the responses shall state whether any documents are being withheld on privilege grounds and, if so, shall be accompanied by a privilege log.

## **Plaintiff's First Set of Interrogatories**

### *References to Documents Produced*

Plaintiff argues that, to the extent that defendants' interrogatory responses refer to the documents produced in response to plaintiff's first document requests, they are improper. The Court agrees.

This Court has held that "such broad responses referencing a party's document production request without sufficient particularization identifying, with reasonable exactness, which documents provide the requested answer to the interrogatory, is insufficient under Fed. R. Civ. P. 33(b)(3)." *Mills v. Steuben Foods, Inc.*, 19-CV-1178WMS(F), 2023 WL 179579, at *2 (W.D.N.Y. Jan. 13, 2023) (collecting cases). *See also Capaccio*, 2025 WL 723207, at *8 (interrogatory responses that refer to documents produced are insufficient; as required by Rule 33(b)(1)(A), "interrogatories must be specifically answered in a form that may be used at trial by the party to whom they are directed and signed by the party under oath"); *N.Y. Cent. Mut. Fire Ins. Co.,* 2023 WL 6304721, at *5 (similar).

Thus, defendants will be ordered to supplement their interrogatory responses and may not reference documents produced as the basis therefor.

### Interrogatory No. 1-7, 11-17, and 21-22

Plaintiff moves to compel more complete responses to these sixteen interrogatories on a variety of grounds. Dkt. #36-13, pp. 13-16. Defendants did not substantively respond to plaintiff's arguments, except to state that "these issues have subsequently been explored extensively through deposition testimony." Dkt. #39, p. 19. That is improper. *See Matalavage v. Sheriff of Niagara Cnty.*, 20-CV-1254Sk(F), 2023 WL 2043865, at *8 (W.D.N.Y. Feb. 16, 2023) (an interrogatory must be answered separately, must be complete within itself, and may not cross-reference depositions or other discovery responses).

Therefore, **within thirty (30) days** of entry of this Decision and Order, defendants shall serve plaintiff with verified amended answers to plaintiff's first set of interrogatories in full compliance with Rule 33 and consistent with the above discussion.

### Plaintiff's Second Set of Document Requests

Plaintiff also argues that defendants' responses to his Second Set of Document Requests 1, 3-7, and 11-24 are deficient. Dkt. #36-13, pp. 16-20.

Defendants' responses to these document requests are problematic for many of the same reasons discussed above: they state, *inter alia*, that there are no

responsive documents or items; that defendants are not "in possession" of requested documents; that they are "unaware" of such documents; that they have already provided responsive documents; or that they are continuing to search for documents. (Responses to Request Nos. 1, 3, 4, 5, 6, 7, 11, 12, 13, 20, 25; Dkt. #39, pp. 19-22).

However, defendants have not provided sworn support for these assertions attesting to how such searches were conducted; whether responsive documents were located; whether defendants' searches are complete; whether all responsive documents located have been produced; and/or whether no responsive documents were located. *Carpaccio*, 2025 WL 723207, at *6.

Defendants have also asserted various privileges in response to Document Request Nos. 14, 15, 16, 17, 18, 19, 21, 22, 23, but they have failed to provide privilege logs. Defendants will be ordered to supplement their responses, in addition to the above requirements, to state whether any documents are being withheld on privilege grounds and, if so, to provide privilege logs in compliance with applicable rules.

Next, the parties now appear to agree about Request No. 7. Defendants shall thus produce documents regarding training conducted by the Miami-Dade Police Department which are in the possession of Chief Thelma Jones. Dkt. #39, p. 20; Dkt. #46, p. 19.

With respect to Request No. 11, the Court finds unconvincing defendants' argument that plaintiff's request for Davidson and Garry's overtime records for a one-month period is overly broad or burdensome, and defendants have not supported their argument with any evidence of the same.

With respect to Request Nos. 12 and 20, they are subject to the above attestation requirements, and defendants are ordered to supplement their responses and produce any responsive documents within their possession, custody, or control.

In particular, the Court notes that plaintiff's counsel avers, with respect to these requests, that Garry testified in his deposition on February 13, 2024 that he has been suspended during his employment with the BPD. Dkt. #36-1, ¶ 6(d). Nonetheless, in their responses to these requests—seeking documents relating to Garry's suspensions and correspondence to Garry from BPD officials to which he testified in his deposition— defendants stated that they were "unaware of any responsive materials at this time" but were "continuing to search for responsive materials." Dkt. #36-4, pp. 11, 15.

These responses seem improbable. The Court thus orders that, in their supplemental responses to Request Nos. 12 and 20, defendants' affiant shall explain, *inter alia*, what efforts had been made to search for responsive documents at that time and how their responses comported with good faith.

Request No. 13 seeks certain BPD bulletins, policies, or special orders to which Velez testified in her deposition. Dkt. #36-4, pp. 11-12. In their response, defendants stated that they were "continuing to search for responsive materials." Dkt. #36-4, p. 12. Defendants' response to the motion to compel is unclear as to whether defendants have completed their search for materials responsive to this request. Defendants are thus ordered to supplement their response with the attestations described above.

Request Nos. 14-16 seek documents pertaining to traffic stops and complaints to the BPD arising out of stops due to inadequate or inoperable license plate lamps, as well as warrantless searches based on the smell of marijuana. Dkt. #36-4, pp. 12-13. These requests are relevant to plaintiff's *Monell* claim. Further, by their terms, these three requests do not, as defendants argue, seek "entire litigation files." Dkt. #39, p. 21.

Request Nos. 17-19 and 21 seek documents related to specific individuals who have been arrested by and/or complained to the BPD, which plaintiff states are relevant to his *Monell* claim. Dkt. #36-13, p. 20. Defendants' argument that "the fact that a lawsuit was allegedly commenced does not have any particular relevance to an alleged failure to investigate or discipline," Dkt. #39, p. 21, is not well taken. *See Black Love Resists*, 334 F.R.D. at 33.

In his reply brief, plaintiff states that he is not requesting "entire litigation files." Dkt. #46, p. 20. However, because these four requests seek "all documents" regarding such individuals, they arguably encompass documents pertaining to any litigation brought by them.

The Court will therefore order defendants to supplement their responses to these requests and produce the documents/items described. However, to the extent that the named individuals have brought legal action against the BPD, defendants need only produce the initiating documents in response to this request.

Request Nos. 22-23—seeking sworn statements or testimony given by Garry in his capacity as a BPD employee—are relevant, and defendants make no specific argument to the contrary, simply invoking privileges. Defendants will thus be ordered to supplement their responses to these requests. As noted, any assertions of privilege must be supported by a privilege log.

Request No. 24 seeks a copy of the Narcotics Unit Operations Manual in effect on May 27, 2019. Dkt. #36-4. Defendants argue that the manual is irrelevant because the individual defendants were patrol officers, not narcotics detectives. Dkt. #39, pp. 21-22. Plaintiff responds that the manual is relevant because he alleges that defendants fabricated a crack cocaine charge against him, and the BPD Manual of Procedures references the narcotics manual. Dkt. #46, p. 20.

"Relevance under Rule 26 is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Jeanty v. Bagley*, 6:22-CV-00319 (BKS/TWD), 2025 WL 892691, at *2 (N.D.N.Y. Mar. 24, 2025) (citation and internal quotation marks omitted). The Court concludes that plaintiff has shown such relevance.

Defendants also assert that the narcotics manual may contain confidential information regarding investigatory police tactics, such as the use of confidential informants and controlled buys. Dkt. #39, p. 22. To address such concerns, the Court orders that defendants may produce the manual to plaintiff subject to a protective order limiting disclosure to attorneys' eyes only.

Finally, as to Request No. 25, defendants state that the Internal Affairs Division Operations Manual has been produced and has not changed. Dkt. #39, p. 22. Defendants shall supplement their response to this request with testimony supporting this assertion.

Therefore, **within thirty (30) days** of entry of this Decision and Order, defendants shall supplement their responses to plaintiff's second document request in accord with the above instructions and this discussion.

**Plaintiff's Fourth Set of Document Requests**

Plaintiff states in his motion to compel that the parties have not met and conferred about plaintiff's fourth set of document requests. Dkt. #36-13, p. 21. In their opposition, defendants state that they provided responses to those requests in April and May 2024, and they have not heard from plaintiff regarding any deficiencies. Dkt. #39, pp. 22-23. In turn, plaintiff states in his reply brief that defendants' responses were untimely. Dkt. #46, p. 21.

It is not clear to the Court that there is a dispute over these requests and, if there is, whether the parties have adequately attempted to resolve it. The Court thus will not address it at this time.

**Plaintiff's Request for Inspection Under Rule 34**

Lastly, plaintiff argues that defendants failed to provide a written response and objection to plaintiff's request for inspection of the BPD C-District station served on defendants on March 22, 2024, and that defendants have thus waived all objections thereto. Dkt. #36-13, p. 20.

The request for inspection does not appear to be in the record, and it is thus difficult for the Court to understand exactly what access to the police station plaintiff is seeking. Defendants state in their opposition that they have no objection to plaintiff inspecting the publicly accessible areas of the station, but that they do object to the "unfettered inspection of secure areas of the Stationhouse which are not publicly available on safety and police privileges." Dkt. #39, p. 22.

This is a serious matter, and the Court will not find a waiver of objections given the security interests involved. It also is not clear whether the parties have attempted to resolve this matter, and plaintiff did not address defendants' concerns in his reply.

The Court thus orders the parties to meet and confer on this issue and report to the Court **within thirty (30) days** of entry of this Decision and Order whether they have reached a resolution.

## **CONCLUSION**

Consistent with the above decision, plaintiff's motion to compel (Dkt. #36) is granted in part and denied in part.

As required by Fed. R. Civ. P. 37(a)(5)(A), defendants shall, **within thirty (30) days** of this Decision and Order, show cause why plaintiff's expenses incurred in connection with plaintiff's motion, including reasonable attorneys' fees, should not be awarded. Plaintiff shall file a response **within 10 days** thereafter, and defendants shall file any reply **within 5 days**.

**SO ORDERED.**

DATED:      Buffalo, New York

March 27, 2025

 **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**